# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-cv-891<br><br>Judge Robert M. Dow, Jr. |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| GA PAVING, LLC, POWER PAVING CONSTRUCTION, INC., also d/b/a POWER PAVING II INC., GEORGE ANGELLILO, and ANTONIO CEFALU, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen as Administrator of the Funds (collectively, "Plaintiffs") filed a complaint against Defendants GA Paving, LLC, Power Paving Construction, Inc., George Angellilo, and Antonio Cefalu (collectively, "Defendants") pursuant to Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(e)(1) and (2) and 1145, and Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. § 185(a). [See 1.] This matter is before the Court on the motion to dismiss

filed by Defendants Power Paving Construction, Inc. and Antonio Cefalu [54]. For the reasons stated below, Defendants' motion [54] is granted in part and denied in part. Defendant Power Paving's motion to dismiss is denied. Plaintiffs may proceed with the claims in Counts I–IV of their complaint against Power Paving. Defendant Antonio Cefalu's motion to dismiss is granted. Plaintiffs' fraud claim against Cefalu (Count VII) is dismissed without prejudice. Plaintiffs are given until September 4, 2018 to file an amended complaint against Defendant Cefalu consistent with this opinion if they choose to do so. This case is set for further status hearing on September 12, 2018 at 9:00 a.m.

## I.    Background[1]

Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and the Chicago Laborers' District Council Retiree Health and Welfare Fund (the "Funds") are multiemployer benefit plans within the meanings of ERISA §§ 3(3) and 3(37). Plaintiff Jorgensen is the Administrator of the Funds and has been authorized to act on the Funds' behalf in the collection of employer contributions that are owed to them. Plaintiff Jorgensen has also been authorized to act on behalf of the Funds in the collection of union dues that are supposed to be transmitted to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). The Funds have been duly authorized to serve as collection agents for the Union, meaning they have been given authority to collect from employers any union dues or benefit contributions which should have been or have been deducted from relevant employee wages. [1, ¶¶ 3–4, 15, 22.]

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Defendants GA Paving LLC ("GA Paving") and Power Paving Construction, Inc. ("Power Paving") are both Illinois corporations. [*Id.*, ¶¶ 5–6.] Defendant George Angellilo is a member and General Manager of GA Paving. [*Id.*, ¶ 7.] Defendant Antonio Cefalu is an officer and shareholder of Power Paving. [*Id.*, ¶ 8.] Both Angellilo and Cefalu, during the relevant time frame alleged in the complaint, were supervisors with authority to hire, fire, and direct the employment of both Power Paving employees and GA Paving employees. [*Id.*, ¶¶ 7–8.]

At all times relevant to the complaint, GA Paving and the Union were parties to successive collective bargaining agreements (the "Agreement"). [*Id.*, ¶ 9.] The Agreement obligates GA Paving to (1) make contributions to the Funds on behalf of employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund, (2) submit monthly remittance reports identifying employees covered by the Agreement and the amount of contributions to be remitted to the Funds on behalf of these employees, (3) deduct union dues from the wages of covered employees, and (4) submit to an audit on demand in order to determine compliance with these obligations. [*Id.*, ¶¶ 16–17, 22, 24.]

Plaintiffs allege that GA Paving has sought to avoid these obligations by paying employees who are performing GA Paving work that is covered under the Agreement and directed by GA Paving supervisors through Power Paving or in cash rather than through GA Paving itself. [*Id.*, ¶ 10.] According to Plaintiffs, these covered employees—despite being paid by Power Paving—work with GA Paving employees, use GA Paving-owned equipment, and are supervised by both Defendants Angellilo and Cefalu on GA Paving projects. Plaintiffs contend that Defendant Cefalu (a Power Paving officer) would contact these employees and direct them to report to work at the GA Paving yard on GA Paving projects. [*Id.*, ¶¶ 11–13.] Plaintiffs specifically name Luis Garcia and Aurelio Duran as employees who were performing work covered by the Agreement and were

paid in this manner, and Plaintiffs list Nicor Gas and the City of Chicago as GA Paving projects on which these covered employees performed for GA Paving while being paid in cash or by Power Paving. [*Id.*, ¶ 10.]

Plaintiffs further allege that, while GA Paving is required to submit to the Funds and the Union monthly benefit contribution reports each month identifying the hours worked by covered employees, Defendant Angellilo caused GA Paving to submit false benefits and dues reports that failed to identify all covered employees and failed to accurately report all hours of work that covered employees performed. [*Id.*, ¶¶ 35–38.] Specifically, at the direction of Angellilo and Cefalu, employees were required to report to GA Paving's yard at 5:30 a.m. to stage vehicles and assemble equipment before departing to the day's job site. However, these employees were prohibited from recording these "staging time" hours on their timecards. Furthermore, these employees were not compensated for travel time to and from the day's job site. Therefore, these employees did not receive wages or have benefit contributions submitted on their behalf for these hours that (1) went unrecorded on their time cards and (2) were not included in the benefits and dues reports submitted to the Funds and the Union. [*Id.*, ¶¶ 40–41.]

According to Plaintiffs, despite the audit obligations in the Agreement, both GA Paving and Power Paving failed to submit all their books and records for a requested audit for the period of March 26, 2012 to the time of the complaint's filing. [*Id.*, ¶¶ 19, 23.] Plaintiffs therefore bring claims in their complaint against Defendants GA Paving and Power Paving for failure to submit to an audit for benefits and dues pursuant to both an alter ego theory (Counts I and II) and a single employer theory (Counts III and IV). Plaintiffs bring claims against Defendant GA Paving for failure to submit to an audit for benefits and dues on a subcontracting theory in the event that Power Paving is not found to be an alter ego of and/or a single employer with GA Paving (Counts

V and VI).  Plaintiffs also bring a common law fraud claim against Defendants Angellilo and Cefalu (Count VII).  Defendants Power Paving and Cefalu have moved to dismiss all of Plaintiffs' claims against them.[2]  [See 54.]

## II.  Legal Standard

Defendants Power Paving and Cefalu have moved to dismiss the claims against them in Plaintiffs' complaint on the basis of Federal Rule of Civil Procedure ("Rule") 12(b)(1), Rule 12(b)(6), and Rule 9(b).[3]

A Rule 12(b)(1) motion seeks dismissal of an action for lack of subject matter jurisdiction. If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).  The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it

---

[2] Power Paving and Cefalu originally filed their motion to dismiss in May 2017.  [See 19.]  Because of the ongoing possibility of settlement discussions, the Court struck these Defendants' motion to dismiss without prejudice and with leave to re-file as necessary.  [See 47.]  Power Paving and Cefalu later re-filed their motion to dismiss in June 2018 after these discussions did not resolve the matter for these Defendants.  [See 54.]  Defendants GA Paving and Angellilo have not moved to dismiss any of the claims against them.

[3] Power Paving's and Cefalu's motion [54] states that it is made pursuant to Rule 9(f), but the Court assumes they meant to invoke Rule 9(b) instead.

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

### III.    Analysis

Both Defendants Power Paving and Cefalu have moved to dismiss the claims against them based on a lack of subject matter jurisdiction. Both Defendants have also moved to dismiss the claims against them for failure to state a claim under the relevant pleading standards set out in Rule 8(a) and Rule 9(b).

## A.    Subject Matter Jurisdiction

Defendants Power Paving and Cefalu first move to dismiss the claims against them pursuant to Rule 12(b)(1).  Defendants specifically argue that the Court lacks jurisdiction over them in this action because neither are signatories to the Agreement between the Union and GA Paving.  Cefalu also argues that he should be dismissed from the complaint because Plaintiff's fraud claim does not confer either diversity jurisdiction or federal question jurisdiction over him.[4] [20, at 4–5.]

The Court concludes that it does have subject matter jurisdiction over Plaintiffs' claims against both Power Paving and Cefalu.  Plaintiffs do not allege that Power Paving is directly liable as a signatory to the Agreement; instead, Plaintiffs allege that Power Paving is subject to the audit requirements of the Agreement based on theories of alter ego and/or single employer liability.  [See 1, ¶¶ 1–28.]  If two entities qualify as a "single employer," or if one entity is found to be the alter ego of the other, "then each business is required to make health and welfare contributions as mandated by a governing [collective bargaining agreement], even if one entity did not sign the [agreement]."  *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Olsen*, 467 F. App'x 513, 517 (7th Cir. 2012) (citing *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998)); see also *Cent. States, Se. & Sw. Areas Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir. 1990) (noting that an alter ego finding "will bind a non-signatory to a collective bargaining agreement").  Therefore, courts "clearly" have subject matter jurisdiction to hold third parties liable for unpaid benefit or dues contributions owed by a signatory to a collective bargaining agreement in such situations.  *Shales v. Schroeder Asphalt Servs., Inc.*, 2013 WL 2242303, at *5 (N.D. Ill. May 21, 2013) (collecting cases and denying motion to dismiss complaint against non-signatory to collective bargaining

---

[4] Defendant makes this argument under Rule 12(b)(2), which addresses personal jurisdiction, but his argument only addresses subject matter jurisdiction.  [See 20, at 5.]

agreement because plaintiffs sufficiently alleged that signatory and non-signatory constituted a single employer); see also *Sloan*, 902 F.2d at 598 (affirming grant of summary judgment on alter ego theory); *Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, 2016 WL 74682, at *3 (N.D. Ill. Jan. 7, 2016) (denying motion to dismiss because plaintiffs had sufficiently alleged a non-signatory to the collective bargaining agreement was the signatory's alter ego); *NECA-IBEW Pension Tr. Fund v. Bays Elec., Inc.*, 894 F. Supp. 2d 1071, 1086–87 (C.D. Ill. 2012) (holding non-signatory entity liable for contribution obligations on both alter ego and single employer liability theories).

Defendants cite only one case to support their argument that the Court lacks jurisdiction over it as a non-signatory. See [20, at 5] (citing *Laborers' Pension Fund v. Joe Cachey Construction Co.*, 947 F. Supp. 365 (N.D. Ill. 1996)). *Joe Cachey* is easily distinguishable from the instant case, however, and thus provides little help to Defendants. In *Joe Cachey*, the plaintiff union sought to enforce the collective bargaining agreement that it had entered into with Joe Cachey Construction Company and sought an audit pursuant to that agreement. *Id.* at 368. The plaintiff also argued that a non-signatory entity, Future Masonry, constituted a single employer together with Joe Cachey and thus was also liable under the agreement. The district court held that even if Future Masonry and Joe Cachey did constitute a single employer, it had no jurisdiction to enforce the collective bargaining agreement on Future Masonry's employees because the plaintiff would have to establish "the propriety of a single bargaining unit comprising the employees of the two employers," and this determination was not within the court's jurisdiction *Id.* at 369–71. In other words, the plaintiff union in *Joe Cachey* was attempting to hold Future Masonry liable for unpaid contributions owed to its non-union employees, not just for contributions owed by employees doing work for Joe Cachey.

Here, Plaintiffs allege that Power Paving is liable because GA Paving employees, performing work covered by the Agreement, were paid through Power Paving so that GA Paving could avoid its obligations under the Agreement, and it seeks an audit of Power Paving on that basis. [See 1, ¶¶ 16, 19, 23–24, 26, 28.] Courts routinely exercise jurisdiction over claims by labor union funds seeking to impose liability on non-signatory entities through either alter ego or single employer liability in this manner without engaging in a "bargaining unit" analysis. See, e.g., *Olsen*, 467 F. App'x at 520 (affirming grant of summary judgment to plaintiff union on single employer liability); *Anderson v. Liles*, 774 F. Supp. 2d 902, 909–10 (N.D. Ill. 2011) (granting summary judgment to plaintiffs on both alter ego and single employer liability theories, concluding that both signatory and non-signatory defendants share the same liability under the relevant collective bargaining agreements). Thus, *Joe Cachey* is inapposite and does not support a different result in this case. See *Shales*, 2013 WL 2242303, at *6 (distinguishing a citation to *Joe Cachey* on a similar basis and holding that the district court has jurisdiction to determine whether to hold a non-signatory company liable for contributions owed to the signatory company's employees); see also *Chi. Dist. Council of Carpenters Pension Fund v. Door Sys., Inc.*, 1999 WL 754696, at *4 (N.D. Ill. Sept. 10, 1999) (noting that a court has jurisdiction to assess which employees are "covered" by relevant collective bargaining agreements because this is a question of contract interpretation).

As discussed more fully below, Plaintiffs have sufficiently alleged that Power Paving is liable under the Agreement pursuant to both alter ego and single employer liability theories. The Court considers all of Plaintiff's allegations as true where, as here, a defendant mounts a facial attack on jurisdiction. See *Apex Digital*, 572 F.3d at 444. And those allegations are sufficient to show that this Court has jurisdiction over their claims against Power Paving.

The Court also has subject matter jurisdiction over the fraud claim against Defendant Cefalu pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Plaintiffs' allegations regarding the purported fraud perpetrated by Cefalu are integrally related to the allegations regarding GA Paving's attempts to circumvent its obligations under the Agreement. [See 1, ¶¶ 32–43.] Therefore, supplemental jurisdiction exists over the fraud claim against Cefalu.

In sum, the Court concludes that it has jurisdiction over both Power Paving and Cefalu and dismissal is not warranted on that basis.[5]

### B. Claims Against Power Paving (Counts I–IV)

In Counts I through IV, Plaintiffs bring claims against Power Paving and GA Paving for failure to submit to an audit for benefits and dues under the single employer theory (Counts III–IV) and the alter ego theory (Counts I–II). [See 1, ¶¶ 1–28.] Power Paving argues that Plaintiffs have failed to state a claim against it under either theory.

### 1. Single Employer Doctrine

"The single employer doctrine holds that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Moriarty*, 164 F.3d at 332; see also

---

[5] Defendants have made the cursory argument in their motion that "dismissal is also appropriate due to lack of standing" because no Plaintiffs are signatories to the Agreement with GA Paving. [20, at 6.] However, this argument is completely unexplained and undeveloped. The Court need not address this argument for that reason alone. See *Green Demolition*, 2016 WL 74682, at *4 n.3 (N.D. Ill. Jan. 7, 2016) (declining to address an undeveloped standing argument raised only in footnotes and noting that "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them") (quoting *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). In any event, Plaintiffs have alleged that they are authorized as collection agents for the Union, which is a signatory to the Agreement. [See 1, ¶¶ 4, 15.] Taking these allegations as true, as the Court must at this stage, Plaintiffs have alleged sufficient facts to show that they have standing to assert their claims. See *Shales v. Schroeder Asphalt Servs., Inc.*, 2013 WL 6858775, at *2 (N.D. Ill. Dec. 30, 2013); *Laborers' Pension Fund v. Safe Envtl. Corp.*, 2013 WL 1874197, at *3 (N.D. Ill. May 3, 2013).

*Anderson*, 774 F. Supp. 2d at 909. Specifically, when two businesses are considered a "single employer," "both businesses will be equally liable under a collective bargaining agreement entered on behalf of only one of them." *Bd. of Trs. of the Pipe Fitters Ret. Fund, Local 597 v. Am. Weathermakers, Inc.*, 150 F. Supp. 3d 897, 905 (N.D. Ill. 2015). Factors to be considered in a single employer analysis are: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Moriarty*, 164 F.3d at 332 (citing *S. Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs, AFLCIO*, 425 U.S. 800, 802 n.3 (1976)); see also *Shales*, 2013 WL 2242303, at *4 (listing elements for single employer doctrine). "No one factor is determinative: the decisionmaker must weigh the totality of the circumstances." *NECA-IBEW Pension Tr. Fund v. Bays Elec., Inc.*, 2011 WL 4435575, at *8 (C.D. Ill. Sept. 23, 2011) (quoting *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben*, 2009 WL 497393, at *20 (C.D. Ill. 2009)). A plaintiff is not required to establish every factor for a court to find two entities constitute a single employer. *Laborers' Pension Fund v. Fuertes Sys. Landscaping, Inc.*, 2018 WL 999898, at *4 (N.D. Ill. Feb. 21, 2018). In general, a single employer relationship is characterized by the "absence of an arm's length relationship found among unintegrated companies." *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 947 (7th Cir. 2013).

Plaintiffs have alleged sufficient facts to support a finding that Power Paving and GA Paving constitute a single employer and thus have, pursuant to Rule 8(a), provided Power Paving with fair notice of the claims against it in Counts III and IV. Plaintiffs allege that both Defendants Angellilo and Cefalu had supervisory authority to hire, fire, and direct the employment of employees of both GA Paving and Power Paving, despite their status as officers of different companies. [1, ¶¶ 7–8, 12–13.] According to Plaintiffs' complaint, Defendant Cefalu, a member

of Power Paving, would direct employees to work at the GA Paving yard and work for GA Paving foremen. [*Id.*, ¶ 13.] Plaintiffs further allege that employees of GA Paving were paid through Power Paving: employees ostensibly paid by Power Paving nevertheless performed GA Paving work on GA Paving projects, with GA Paving employees, using GA Paving equipment. [*Id.*, ¶ 11.]

These allegations plead the existence of at least three of the factors relevant to the single employer analysis: common management, centralized control of labor relations, and interrelated operations. Despite being two separate companies, both GA Paving and Power Paving utilized the same employees, the same managers, and the same equipment on the same projects. While Plaintiffs ultimately might not be able to prove that Power Paving operated as a single employer with GA Paving in this manner such that it would be liable under the Agreement, at this stage Plaintiffs have pled sufficient facts to plausibly suggest that single employer status exists because the two entities are not operating at arm's length from each other and thus have stated a claim under the single employer doctrine against Power Paving for failure to submit to an audit. See *Shales*, 2013 WL 2242303, at *5 (finding that plaintiffs adequately alleged single employer claim where plaintiffs alleged that both entities were owned and managed by the same person, that employees received direction from the same supervisors, and both entities operated from the same location and used the same equipment); *Chi. Regional Council of Carpenters Pension Fund v. McGreal Constr., Inc.*, 2012 WL 5921140, at *3 (N.D. Ill. Nov. 26, 2012) (plaintiffs sufficiently pled single employer theory where they alleged three of the four single employer factors: interrelation of operations, common management, and common ownership); *Trs. of Chi. Regional, Council of Carpenters Pension Fund v. Cent. Rug & Carpet Co., Inc.*, 2012 WL 426887, at *2 (N.D. Ill. Feb. 10, 2012) (plaintiffs sufficiently stated a single employer claim where the entirety

of the allegations stated that, when auditing signatory defendant's books, plaintiffs discovered the non-signatory defendant was a "possibly related" company).

### 2. Alter Ego Doctrine

Plaintiffs have also alleged that Power Paving is liable under the Agreement for failure to submit to an audit based on the alter ego doctrine. "The alter ego theory 'focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" *Green Demolition*, 2016 WL 74682, at *2 (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987)). "Factors relevant in assessing an alter ego claim include 'substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" *Id.* (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998)). The alter ego doctrine is similar to the single employer doctrine, but it turns on issues of intent: "unlawful motive or intent are critical inquiries in an alter ego analysis." *Anderson*, 774 F. Supp. 2d at 909 (quoting *Trs. of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 789 (7th Cir. 1993)). An attempt to avoid collective bargaining agreement obligations, by paying employees through a separate entity, evidences such an unlawful motive or intent. *Fuertes Sys. Landscaping*, 2018 WL 999898, at *4.

Plaintiffs have also satisfied Rule 8(a)'s pleading standard for their alter ego claims against Power Paving, and dismissal of Counts I and II is not warranted on this basis. Plaintiffs allege that GA Paving and Power Paving are alter egos of each other because GA Paving pays employees through Power Paving, and these employees paid by Power Paving perform GA Paving work, using GA Paving equipment, alongside GA Paving employees. [1, ¶¶ 10–11.] These employees

were managed by both Angellilo (a GA Paving general manager) and Cefalu (a Power Paving officer) on GA Paving projects, and they were supervised at the GA Paving yard by GA Paving foremen. [*Id.*, ¶¶ 12–13.] Plaintiffs further allege that this GA Paving work was done through Power Paving with the intent of avoiding GA Paving's obligations under the Agreement. [*Id.*, ¶ 10.] Plaintiffs specifically identify two employees, Luis Garcia and Aurelio Duran, as employees who worked for GA Paving on GA Paving projects but were paid through Power Paving or through cash payments to avoid GA Paving's obligations under its relevant agreement with the Union. [*Id.*] Plaintiffs further identify two GA Paving projects that utilized Power Paving-paid employees. [*Id.*] These allegations, taken as true, plausibly suggest common management, equipment, customers, and business purpose between the two entities.

Power Paving argues that Plaintiffs' allegations are insufficient to state an alter ego claim because there are no allegations that Power Paving "is somehow a disguised continuance of a former business entity" known as GA Paving. [20, at 5–6.] The fact that the two entities exist side-by-side, however, does not preclude an alter ego claim. See *Green Demolition*, 2016 WL 74682, at *3; *RKN Concrete Constr., Inc. v. Laborers' Pension Fund*, 2015 WL 1888513, at *8 (N.D. Ill. Apr. 24, 2015). Rather, as discussed, the critical element of an alter ego claim is an unlawful motive or intent. In addition to Plaintiffs' allegations that GA Paving and Power Paving share management, supervisors, and equipment, and perform the same work, Plaintiffs allege that covered employees of GA Paving were paid through Power Paving in order to avoid GA Paving's obligations under the Agreement. Whether or not discovery bears out Plaintiffs' claim to demand an audit on this basis, the allegations suffice to overcome a Rule 12(b)(6) motion to dismiss. See *Green Demolition*, 2016 WL 74682, at *3 (plaintiffs stated alter ego claim where they alleged that two companies used same employees for their projects and employees working on projects for one

defendant were paid through accounts of another defendant to avoid collective bargaining agreement obligations, and they provided specifics of several individuals who performed covered work and were paid in this manner); *Chi. Regional Council of Carpenters Pension Fund v. FAC Constr. & Design, Inc.*, 2011 WL 6369792, at *2–3 (N.D. Ill. Dec. 15, 2011) (denying motion to dismiss claim against a non-signatory to the agreement based on alter ego theory where plaintiff union alleged only that during audit of signatory's books, the union discovered the potentially related company); *Cent. Ill. Carpenters Health & Welfare Fund v. J.L.H. Interior Constr., Inc.*, 2007 WL 3231416, at *3–4 (C.D. Ill. Oct. 30, 2007) (denying motion to dismiss alter ego claim where plaintiffs alleged that same individuals controlled both signatory and non-signatory company, and those individuals channeled work through the non-signatory company so as to avoid compliance with the collective bargaining agreement).

In sum, Plaintiffs have sufficiently stated claims against Defendant Power Paving in Counts I through IV based on both the single employer theory and the alter ego theory. Therefore, Power Paving's motion to dismiss the claims against it in Counts I through IV is denied.

### C.     Claim Against Cefalu (Count VII)

In Count VII, Plaintiffs bring a fraud claim against Defendants Angellilo and Cefalu. [See 1, ¶¶ 34–43.] Defendant Cefalu moves to dismiss Count VII against him, arguing that Plaintiffs have not pled this fraud claim with particularity as required by Rule 9(b).

To plead a common law fraud claim in Illinois, a plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 618 (N.D. Ill. 2010) (quoting *Doe v. Dilling*,

888 N.E.2d 24, 35–36 (Ill. 2008)).  A fraud claim must also be pled with the requisite particularity. Fed. R. Civ. P. 9(b).  Rule 9(b) specifically requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Blankenship, LLC*, 2015 WL 5895416, at *7 (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

In Count VII, Plaintiffs allege that Cefalu, along with Angellilo, paid employees who performed work covered by the Agreement through Power Paving to avoid reporting appropriate wages and benefit contributions required to be paid under the Agreement's terms.  [1, ¶ 39.] Specifically, Plaintiffs allege that Angellilo and Cefalu directed employees of both GA Paving and Power Paving to report to the GA Paving yard early in order to stage vehicles and assemble tools and equipment for the day's work.  [*Id.*, ¶ 40.]  However, employees were prohibited from recording these hours worked on their timecards.  [*Id.*]  Employees also were not compensated for the time spent driving to and from the day's jobsites.  [*Id.*]  Therefore, these employees "did not receive wages or have benefit contributions submitted on their behalf for hours that they worked staging and driving to jobsites."  [*Id.*]  Plaintiffs further allege that Angellilo (not Cefalu) submitted false benefit and dues reports to the Union that systematically under-reported contributions and dues owed to the Union, and Plaintiffs and the Union relied to their detriment on these false reports and suffered harm as a result of that reliance.  [*Id.*, ¶¶ 37–38, 41–42.]

Although Plaintiffs allege the broad rubric of a fraud claim against Cefalu, their present allegations are not pled with the specificity required by Rule 9(b), and therefore Count VII against Defendant Cefalu must be dismissed.  Plaintiffs do not identify any specific misrepresentation made by Cefalu himself that could support a fraud claim against him.  Plaintiffs' only fraud

allegations regarding Cefalu's actions and statements describe his general actions in directing employees to show up for work at a specific time, which ultimately led to false reports being submitted to the Union. Plaintiffs do not allege that Cefalu himself made any specific misrepresentation to anyone, however, let alone when, how, or to whom any misrepresentations by Cefalu were made. Therefore, Plaintiffs have not pled the "who, what, when, where, and how" of the alleged fraud on Cefalu's part. *DiLeo*, 901 F.2d 624 at 627.

The only specific misrepresentations alleged in the complaint are the false benefit and dues reports that Plaintiffs allege Angellilo submitted that systematically under-reported contributions and dues that were owed to the Union for covered work. But Plaintiffs only allege that Angellilo, not Cefalu, submitted or directed the submission of these allegedly fraudulent reports. Thus, these reports cannot serve as a basis for a fraud claim against Cefalu. The general allegations against Cefalu do not explain his role in the alleged fraud with enough specificity to survive a motion to dismiss. See *West v. Act II Jewelry, LLC*, 2016 WL 1073095, at *5 (N.D. Ill. Mar. 18, 2016) (granting motion to dismiss fraud claim where plaintiffs did not allege a statement made personally by the defendants relating to the issue in the case); cf. *Lake City Janitorial*, 758 F. Supp. 2d at 618 (denying motion to dismiss fraud claim where plaintiffs alleged specific misrepresentations, the dates of these misrepresentations, and how the defendant carried out the alleged fraud).

Therefore, Defendant Cefalu's motion to dismiss is granted, and Count VII of Plaintiff's complaint is dismissed against Cefalu without prejudice. Plaintiffs may file an amended complaint against Defendant Cefalu if they believe the can do so consistent with Rule 9(b) and the guidance set forth in this opinion.

## IV.    Conclusion

For the reasons stated above, Defendants' motion [54] is granted in part and denied in part. Defendant Power Paving's motion to dismiss is denied.  Plaintiffs may proceed with the claims in their complaint against Power Paving.  Defendant Antonio Cefalu's motion to dismiss is granted. Plaintiffs' fraud claim against Cefalu is dismissed without prejudice.  Plaintiffs are given until September 4, 2018 to file an amended complaint against Defendant Cefalu consistent with this opinion if they choose to do so.  This case is set for further status hearing on September 12, 2018 at 9:00 a.m.


Date:  August 2, 2018                                    _____
                                                                          Robert M. Dow, Jr.
                                                                          United States District Judge